UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
RYAN MAYO and TAKE FLIGHT AVIATION, LLC,

                Plaintiffs,

  -against-

COUNTY OF ORANGE and
EDWARD MAGRYTA,

                Defendants.
-----------------------------------------------------------------------x

No. _____

**COMPLAINT**

By and through their undersigned counsel, plaintiffs RYAN MAYO and TAKE FLIGHT AVIATION, LLC as and for their Complaint against defendants COUNTY OF ORANGE and EDWARD MAGRYTA, hereby allege as follows:

### NATURE OF THE ACTION

1. This is an action, under 42 U.S.C. § 1983, for political retaliation in violation of the First Amendment to the United States Constitution.

2. Plaintiff Ryan Mayo owns and operates plaintiff Take Flight, Aviation LLC (hereinafter "Take Flight"), a successful flight school, which, since 2012, has conducted business from the Orange County Airport in Montgomery, New York.

3. The Orange County Airport is a division of the defendant County of Orange's Department of Public Works (hereinafter "DPW") which is overseen by its director, defendant Edward Magryta.

4. Since December 1, 2012, Take Flight has leased an 8,000 square foot hangar, with associated tie downs and parking area, from the defendant County.

5. The lease agreement between the parties expired as of November 30, 2017, and, since that time, Take Flight has had a month-to-month tenancy.

1

6. Over the last four and half years, plaintiffs have sought to negotiate the terms of a new lease with the defendant County and the parties had been working cooperatively and in good faith toward that end into early 2021.

7. In 2021, after having switched from the Republican to the Democratic Party following Donald Trump's election as president, plaintiff Mayo ran to be a County Legislator for Legislative District 11.

8. After his candidacy became publicly known in early 2021, the defendants grew increasingly hostile toward plaintiffs and, most recently, demanded that plaintiffs quit their tenancy, an infeasible course of action which shall irreparably harm them.

## PARTIES

9. Plaintiff Ryan Mayo is resident of Orange County, New York and is the owner and President of plaintiff Take Flight Aviation, LLC.

10. Plaintiff Take Flight Aviation, LLC is a New York State domestic limited liability company, organized and existing pursuant to the laws of the State of New York.

11. Defendant County of Orange is a municipal corporation organized and existing pursuant to the laws of the State of New York.

12. Defendant Edward Magryta is the Director of the Division of Aviation of the Department of Public Works of the defendant County of Orange and has held that position at all times relevant to this proceeding.

## JURISDICTION AND VENUE

13. As plaintiffs assert violations of their constitutional rights and bring this action under 42 U.S.C. § 1983, this Honorable Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.

14. As the events at issue in this action occurred in the County of Orange, which is within this judicial district, venue in this Court is proper under 28 U.S.C. § 1392(b).

## FACTUAL ALLEGATIONS

15. Plaintiff Mayo is 42 years of age and has a business background.

16. In or about 2012, plaintiffs commenced renting space at the Orange County Airport for a flight school, for which Mayo started using the corporate name Take Flight Aviation, LLC.

17. This school has now grown into a nationally recognized training facility.

18. After it became publicly known that plaintiff Mayo was running last year as the Democratic Party candidate for the Orange County Legislature from his legislative district, his relationship with the County of Orange deteriorated.

19. Orange County is politically dominated by the Republican Party, as it has been for more than thirty years.

20. This party controls sixteen of the twenty-one seats in the County Legislature, and all elected county-wide positions, including County Executive, Sheriff, County Clerk, District Attorney, and three elected County Court judges.

21. The defendant County has now desisted from any lease negotiations with plaintiff and, as of July 19, 2022, demanded that he and his company quit the premises.

22. In 2012, plaintiffs signed a five-year lease, renting both hangar space and tie down property which allowed them to run their flight school.

23. During the term of this lease, neither defendants nor their agents, employees or assigns advised plaintiffs of any significant issues with their tenancy.

24. In 2017, the county claimed that plaintiffs late notified its agents of his intent to renew the five-year lease, which was to have occurred automatically with sixty days' notice before its expiration.

25. Instead of an automatic extension of that five-year lease, the county renewed plaintiffs on a month-to-month basis and plaintiffs had no written lease.

26. Between 2017-2019, plaintiffs had very little contact with County officials regarding the lease renewal issue.

27. Through 2020, plaintiffs' transactional counsel, Salvatore A. Lagonia Esq., engaged in extensive negotiations with the County about a new five-year lease.

28. This process eventuated in the County tendering such a lease to plaintiffs in December 2020.

29. At the time the County proposed this five-year lease, plaintiff Mayo had not announced his candidacy for any political office, and he was not politically active in the county.

30. The five-year lease the County tendered in December 2020 did not properly separate certain properties plaintiffs intended to lease through separate lease instruments, and the County Attorney's office promised to provide separate leases representing these different parcels.

31. Plaintiffs expected this process to take days, but, due to personnel changes at the County Attorneys' office, they did not receive proper five-year leases in December 2020 or January 2021.

32. In February 2021, plaintiff Mayo's intent to seek political office became public knowledge as he began gathering signatures required to qualify for the ballot.

33. Meanwhile, Mayo and his lawyer waited for the proper leases from the County, but these were not forthcoming.

34. Through 2021, plaintiffs continued to lease month-to-month.

35. Between 2019-21, the revenues plaintiffs' training school generated caused the County Airport to run in the black, not requiring public subsidies, as had long been the case.

36. In the summer 2021, the County's airport director, defendant Magryta, questioned why plaintiff was running for public office and stated that doing so was not a good idea.

37. When he learned of this comment, plaintiff Mayo brushed it off and continued his candidacy.

38. In October 2021, during his contested campaign, plaintiff Mayo agreed to host Governor Hochul at the airport for a get-out-the-vote event.

39. When he learned of this event, defendant Magryta told plaintiff Mayo to cancel it.

40. Magryta stated that he had spoken with the county attorney's office about the event and that there was concern and anger there about the event.

41. Plaintiff Mayor did not cancel the event and the Governor attended it and Magryta filmed the event from afar.

42. In December 2021, plaintiff began making inquiries to defendant Magryta about the status of his lease extension.

43. Plaintiff was concerned that the county was delaying a proper extension.

44. In response, in early January 2022, about two months after the election [which plaintiff lost], for the first time, defendant Magryta claimed that plaintiffs owed the County fees for late payment of monthly rent and had failed to pay rent for certain months.

45. Defendant Magryta also insisted that plaintiffs desist from using credit cards for the extensive fuel purchases they made daily from the airport, citing issues with the credit card which really derived from the county's own faulty credit-checking system.

46. Before receiving this email, plaintiff Mayo had no idea, let alone prior notice, that the County or anyone associated with managing the airport, had any issues with plaintiffs' history of rent payments or claimed he owed late fees.

47. In response to what plaintiff Mayo regarded as hostile communication from the airport director, he requested specifics to support the claim that plaintiffs were delinquent and owed the County late fees or otherwise.

48. Plaintiffs received such detail for the first time six months later, in July 2022.

49. Absent verification of the county's claims, plaintiff Mayo disputed the County's accounting and noted that it had never once notified him or his agents of a single late fee or missed payment until after his political candidacy.

50. In February 2022, without resolution of any past owed sums, the County offered plaintiffs an 18-month probationary lease

51. This lease was not acceptable as a federally certified flight training school like plaintiffs' is required to have at least a three-year operating lease if it enters any written lease.

52. The County knew this when it offered the lease it did.

53. Through counsel, plaintiffs rejected this probationary lease and continued to seek a five-year lease.

54. Between February and May 2022, plaintiffs' counsel attempted to negotiate with the County and reported that he was making some progress in resolving outstanding issues and hoped to consummate a five-year lease.

55. As noted above, in February 2022, the County changed its policy, refused to accept credit cards for fuel purchases and required checks on a transaction-by-transaction basis to cover necessary fuel.

56. After several large customers bounced checks to plaintiffs, this change caused issues, and they bounced thirteen checks.

57. As soon as he learned of the issues with the bounced checks, Plaintiff Mayo made good on every penny owed.

58. On July 19, 2022, the County advised plaintiffs that it was ending negotiations, and demanded that they quit occupancy at the airport.

59. On July 25, 2022, Stephen Brescia, the long-time Republican Chair of the Orange County Legislature, visited plaintiff Mayo and suggested that the Hochul visit was related to plaintiffs' current issues with the county.

60. Quitting the premises would bankrupt plaintiffs, as there is no comparable location for their flight school in this region.

61. Plaintiffs grossed $6.100,000 in 2021 and employ twenty-six people.

62. This business needs an established infra-structure, and these are rare, especially in more rural areas like Orange County.

63. Plaintiffs also have obligations to train students through the area BOCES school and will not be able to fulfill these obligations if the County evicts them from the airport.

64. During the last decade, plaintiffs have helped transform the airport to a profit center for the County.

65. In this time period, specifically before plaintiff Mayo ran for political office, defendants leased to plaintiffs additional real property at the airport as their operation grew.

66. Plaintiffs have the means and ability to satisfy any accurate accounting of delinquencies, but their records do not square with the County's.

67. However, despite plaintiffs' repeated requests, the County delayed providing them any accounting of alleged delinquencies and has been unwilling to schedule a meeting to resolve any issues.

68. More recently, defendants have demonstrated their retaliatory animus by grasping at other straws to justify plaintiffs' proposed eviction, claiming for instance that they are storing certain barrels improperly in one of the leased hangars.

69. In truth, defendant Magryta has known of these barrels for years and why they are where they are and raised no protest until recently.

70. Defendants have failed to provide timely repairs to facilities plaintiffs rent despite ample and repetitive notice and thereby breached their obligation to plaintiffs.

71. Plaintiffs have sought no prior relief.

72. Defendants have obtained no judgment of eviction nor yet initiated any such proceeding in any court of competent jurisdiction in Orange County.

73. Defendants have implemented the unconstitutional policy through their own conduct and that of other County officials, known and unknown, with whom they have collaborated.

## CLAIMS FOR RELIEF

### COUNT I
### Freedom of Expression and Association
### 42 U.S.C. § 1983; U.S. Const., amend I

74. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs "1" through "73" above as if fully set forth herein.

75. By refusing to extend plaintiffs a lease because of plaintiff Mayo's association with the Democratic Party and his campaign for County office on its ticket, defendants have violated their right to be free from reprisal for constitutionally protected expressive, associational, and political

activity in contravention of the First Amendment as made actionable against them under 42 U.S.C. section 1983.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Honorable Court (1) enjoin their eviction from the Orange County Airport pending a hearing on their application for a preliminary injunction; (2) temporarily, preliminarily, and permanently enjoining said eviction; (3) award to plaintiffs compensatory and punitive damages as provided by law; (4) and enter any other relief the interests of law and equity require, including the award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

Dated:  August 1, 2022

Respectfully submitted,

MICHAEL H. SUSSMAN, ESQ. [3497]


SUSSMAN & ASSOCIATES
PO BOX 1005
1 RAILROAD AVENUE, STE 3
GOSHEN, NEW YORK 10924
(845)-294-3991

Counsel for Plaintiffs